```
 1                    UNITED STATES DISTRICT COURT

 2                FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,      .
                                    .
 5              Plaintiff,          . August 31, 2015
                                    . 2:21 p.m.
 6        v.                        .
                                    .
 7   OSCAR GARCIA-BRAVO,            . 15-mj-02642-JMA
     IGNACIO YOBAN MARTINEZ         .
 8      GAXIOLA,                    . 15-mj-02645-JMA
     FRANCISCO RAFAEL               .
 9      ACOSTA-JIMENEZ,             . 15-mj-02646-JMA
     ALFREDO RUELAS,                . 15-mj-02647-JMA
10   CLAUDIO ARMANDO TOSCANO, AND   .
        MARINO RAMOS-VILLANUEVA,    . 15-mj-02648-JMA
11   JOSE REFUGIO MOSQUEDA-MONCADA,.  15-mj-02632-JMA
     SANTIAGO SEGURA-GARCIA,        . 15-mj-02633-JMA
12   ROSMAN CONCEPCION-AYALA,       . 15-mj-02635-JMA
     ERNESTO CASILLAS-PEREZ,        . 15-mj-02637-JMA
13   CHARLES ALEXANDER GOOD,        . 15-mj-02638-JMA
     LORENZO MAGANA-MENDOZA,        . 15-mj-02631-JMA
14   JESUS GUADALUPE-ROSALES,       . 15-mj-02641-JMA
     MARTHA ESTELA RODRIGUEZ        .
15      LOMELI,                     . 15-mj-02644-JMA
                                    .
16              Defendants.         . San Diego, California
     . . . . . . . . . . . . . . . .
17

18

19            TRANSCRIPT OF SHACKLING DISCUSSION
                BEFORE THE HONORABLE JAN M. ADLER
20                UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25   ///
```

```
 1                      A-P-P-E-A-R-A-N-C-E-S
 2
 3   For the Plaintiff:     United States Attorney's Office
                            By: ANDREW YOUNG, ESQ.
 4                          880 Front Street, Room 6293
                            San Diego, California 92101
 5
 6   For the Defendant:     Federal Defenders of San Diego, Inc.
                            By: ARON ISRAELITE, ESQ.
 7                          225 Broadway, Suite 900
                            San Diego, California 92101
 8
     Interpreter:           Letty Lewis
 9                          Certified Spanish Interpreter
10
11
12
13
14
15
16
17
18
19
20
21
22   Transcriber:           Chari L. Possell, RPR, CRR
                            USDC Clerk's Office
23                          333 West Broadway, Suite 420
                            San Diego, California 92101
24
25   Recorded by Electronic Recorder, Transcribed by Computer.
```

```
 1            SAN DIEGO, CALIFORNIA; AUGUST 31, 2015; 2:21 P.M.
 2                                 -o0o-
 3            THE CLERK:  Calling matters 8, 9, 10, 11, 12, 13, 14,
 4    15, 16, 17, 18, 19, and 20 from the log.  Matter Number 8,
 5    15-mj-2642, United States of America v. Oscar Garcia-Bravo;
 6    matter Number 9, 15-mj-2645, United States of America v.
 7    Ignacio Yoban Martinez Gaxiola; matter Number 10, 15-mj-2646,
 8    United States of America v. Francisco Rafael Acosta-Jimenez;
 9    matter Number 11, 15-mj-2647, United States of America v.
10    Alfredo Ruelas; matter Number 12, 15-mj-2648, United States of
11    America v. Claudio Armando Toscano and Marino Ramos-Villanueva;
12    matter Number 13, 15-mj-2632, United States of America v. Jose
13    Refugio Mosqueda-Moncada; matter Number 14, 15-mj-2633, United
14    States of America v. Santiago Segura-Garcia; matter Number 15,
15    15-mj-2635, United States of America v. Rosman
16    Concepcion-Ayala; matter Number 16, 15-mj-2637, United States
17    of America v. Ernesto Casillas-Perez; matter Number 17,
18    15-mj-2638, United States of America v. Charles Alexander Good;
19    matter Number 18, 15-mj-2631, United States of America v. The
20    Person Charged as Lorenzo Magana-Mendoza; matter Number 19,
21    15-mj-2641, United States of America v. The Person Charged as
22    Jesus Guadalupe-Rosales; matter number 20, 15-mj-2644, United
23    States of America v. The Person Charged as Martha Estela
24    Rodriguez Lomeli.
25            MR. ISRAELITE:  Aron Israelite, Federal Defenders, on
```

1  all log matters.
2      And Your Honor, I would like to be heard, if possible, on
3  the issue of shackling, just to give you a heads up.
4          THE COURT:  All right.  As I indicated this morning,
5  I am happy to have you incorporate by reference the very
6  extended and articulate remarks made by your colleague,
7  Mr. Eilers.
8          MR. ISRAELITE:  Thank you, Your Honor.  I would like
9  to be heard with some additional remarks, if possible.
10          THE COURT:  Okay.
11      (Defendants entered the courtroom.)
12          THE COURT:  All right.  Mr. Israelite?
13          MR. ISRAELITE:  Your Honor, this is my renewed motion
14  to remove the five-point restraints that are on the defendants
15  sitting in the box pursuant to the Ninth Circuit decision in
16  *Sanchez-Gomez*.  As Your Honor alluded to this morning, this has
17  been going -- the issue of shackling has been going on since
18  October 2013.  At that time, many of the same arguments that
19  were made this morning were made before the Court, and the
20  Court, deferring to its own reading of *Howard*, decided to keep
21  the shackles on.
22      That case has been litigated.  It's gone up to the Ninth
23  Circuit in the normal course, and the Ninth Circuit held that
24  that policy, that the shackling of these defendants, was
25  unconstitutional; that for two years, every time defendants

1  came to the court with shackles on, they were being treated
2  unconstitutionally.  So I have to admit that I am a little
3  surprised to see the defendants in shackles this
4  morning -- this afternoon.
5       As Your Honor alluded to, one of the reasons the Ninth
6  Circuit held the policy unconstitutional was economic, and so
7  in justifying the use of shackles this morning, it sounds like
8  Your Honor is incorporating by reference that justification.
9           THE COURT:  I want to step in and say what I
10 articulated this morning was security, security, security,
11 security.  Nothing I said had to do with economics.
12          MR. ISRAELITE:  Exactly.  Exactly.
13          THE COURT:  That's what I said.
14          MR. ISRAELITE:  That's what I was trying to say; Your
15 Honor didn't mention economic justifications.  But I believe
16 that the *Sanchez-Gomez* case was about more than economic
17 justifications.  As Mr. Eilers alluded to, the same exact
18 security concerns, with the exception of the elevator issue --
19 which I will address separately -- were before the
20 *Sanchez-Gomez* Court and addressed.
21      And I wanted to read a couple of quotes into the record.
22 The Ninth Circuit said, "The Government has not demonstrated
23 that the courthouses" -- plural -- "in the Southern District
24 pose similar problems security-wise to the one in *Howard*."
25 That's on page 11 of the decision.

1       Later on, on page 11, "No similar design problems have
2  been shown to exist in the Southern District with respect to
3  security."
4       Additionally, the Court said that the District and the
5  Government have not pointed to causes or magnitude of the risk
6  that were present in *Howard*.
7       This morning Your Honor referenced security concerns that
8  were made in October of 2013 and throughout, that were made in
9  the litigation before Judge Burns and that were made in the
10 litigation before the Ninth Circuit; and the Ninth Circuit, as
11 I just demonstrated with those quotes, rejected those
12 explanations.
13      Furthermore, the Court criticized the policy and the
14 actions of the District for not considering less-restrictive
15 measures, for not making specific findings.  And in the
16 *Howard* -- sorry -- in the *Sanchez-Gomez* decision, the Court
17 made specific reference to the acts of violence that had
18 spurred on the request for five-point shackling.
19      Additionally, this morning, in citing security, Your
20 Honor, you made only generalized references to violence and the
21 fact that some of our defendants --
22          THE COURT:  I am going to step in.  I must correct
23 the record.
24      There have been demonstrated incidents of violence in the
25 jury box.  I know personally of two such incidents, where

1    prisoners attacked other prisoners, in El Centro.  Those are
2    just two examples.  They are documented.  I am not making it
3    up.  It is true.  That's what I was --
4            MR. ISRAELITE:  And Your Honor, I am not accusing the
5    Court of making anything up.  To the contrary, I believe those
6    examples were before the Court.  And even if they weren't,
7    those examples pertain to El Centro, and given the quantity of
8    defendants in this district -- we see thousands of people a
9    year -- two incidents certainly doesn't -- does not allow for
10   the implementation of blanket shackling.
11           THE COURT:  Again -- again, to be perfectly clear on
12   the record, those are two examples.  I don't know that there
13   aren't more.  And I am not here to argue with you.  I want you
14   to make whatever record you want to make --
15           MR. ISRAELITE:  I will conclude, Your Honor.
16           THE COURT:  -- but I do want to make clear what I was
17   saying.
18           MR. ISRAELITE:  Well, for the record, I think the
19   fact that the Court doesn't know and is having five-point
20   shackling is sort of the exact problem I am getting at, that
21   there's this policy ostensibly still in place or, if not a
22   policy, the same result that the Court just said was
23   unconstitutional.
24       And I want to make clear that this isn't just a
25   theoretical concept for myself and for those of us who stand up

1   and object to shackling.  There are dignity issues with the
2   process as well as how people see the courts.
3       And in just a moment, Your Honor is going to explain to
4   the defendants who are sitting in the box the various
5   constitutional rights that they have, and I don't know how they
6   can expect that this Court will follow those constitutional
7   rights or take them seriously when the Ninth Circuit has just
8   said five-point shackling is unconstitutional, after two years
9   of litigation, and they find themselves sitting in the box
10  right now in five-point shackles.
11      Those are the objections, and that's the record I wish to
12  make.
13              THE COURT:  All right.  Thank you.
14      I do want to add one thing that I believe I said this
15  morning, but I want to just reiterate it and make it clear.
16      In the *Sanchez-Gomez* case, the Court went, at some pains
17  and more than one place in the opinion, to note that the
18  full-shackling policy of this district that was before the
19  Ninth Circuit in *Sanchez-Gomez* was applied not only in initial
20  appearances but in many, many other appearances.  That is not
21  what I announced this morning would be what I intend to do this
22  week, and that is a very key point of distinction.
23      On page 9 of the slip opinion in *Sanchez-Gomez*, it says,
24  and I quote in part, "The policy in *Howard* applied only to
25  first appearances while the policy in the Southern District

1  applies to a wide range of nonjury proceedings."
2      So there are many points made in *Sanchez-Gomez*.  I don't
3  intend to argue with you.  Of course, you are welcome to make
4  your record, and you and Mr. Eilers have done so forcefully.
5      But I have before me this afternoon 14 persons in the jury
6  box, all of whom are not only close to me, but close to the
7  interpreter, close to the attorneys, and close to people in the
8  gallery.
9      I believe, for all the reasons I mentioned this morning --
10 which I again incorporate by reference -- that with this many
11 people, in the proximity they are to all of the court personnel
12 and persons attending, that at an initial appearance of this
13 large group, there is ample justification for the five-point
14 shackling.
15     And I will give the Government an opportunity to add
16 anything you wish, and then we will proceed.
17          MR. YOUNG:  Thank you, Your Honor.
18     All I would add is that the decision given out by the
19 Ninth Circuit ruled that the blanket rule that this District
20 was employing was unconstitutional.  As this Court has shown
21 this morning, the Court is not applying a blanket rule.
22 Whether or not you are requiring -- whether or not the Court is
23 requiring shackling, five-point restraints, is based on the
24 number of defendants -- defendants in the jury box as well as
25 other circumstances.  And so -- and nothing in that decision

1  calls for a particularized, individualized decision with regard
2  to each defendant, either.  This Court has, all day, applied
3  reason to each situation without applying a blanket rule.
4       That's all the Government would add.
5           THE COURT:  I will add one final thing, and that is
6  that in *Sanchez-Gomez*, at the end of the opinion, the Court
7  says, "We do not say a blanket policy of shackling defendants
8  in nonjury proceedings is never permissible; indeed, we
9  approved of one such policy in *Howard*.  We merely reiterate, we
10 recognize that in *Howard*, such a policy must be adopted with
11 adequate justification of its necessity."
12      All right.  That's all I have to say.  I appreciate you
13 making your record.
14          MR. ISRAELITE:  May I add one quick thing to the
15 record, factual circumstances?
16          THE COURT:  Yes.  Sure.
17          MR. ISRAELITE:  First, Your Honor, since we are
18 pointing out the factors in the courtroom, in addition to the
19 amount of people in the box, there are two U.S. marshals and
20 one member of courtroom security here.
21      And then one final thought -- and I just think I need to
22 place this on the record -- is the Court in *Sanchez*
23 specifically found that the reasons proffered by the Southern
24 District in its appeal by the Government didn't even meet what
25 was set out in *Howard*, and those are the same reasons I believe

1   we have heard today, and *Howard* permitted only ankle shackling.
2   So it's hard to understand if those reasons weren't enough --
3   were insufficient before the Court, they now can allow
4   something more than *Howard*.  Specifically, the Court said,
5   "This case in fact references less justification for the
6   shackling policy than did the record in *Howard*."  So I don't
7   really see much has changed, but I understand the Court's
8   ruling.
9           THE COURT:  All right.  Thank you.
10      (Further unrelated proceedings had, recorded but not
11  transcribed herein.)
12                              -o0o-

```
 1                  C-E-R-T-I-F-I-C-A-T-I-O-N
 2
 3          I hereby certify that I am a duly appointed,
 4   qualified and acting Transcriber for the United States District
 5   Court; that the foregoing is a true and correct transcript of
 6   the proceedings had in the aforementioned cause; that said
 7   transcript is a true and correct transcription of my
 8   stenographic notes of the recording; and that the format used
 9   herein complies with rules and requirements of the United
10   States Judicial Conference.
11             DATED:  September 1, 2015, at San Diego,
12   California.
13
14                            /s/  Chari L. Possell
                              _____
15                            Chari L. Possell
                              CSR No. 9944, RPR, CRR
16
17
18
19
20
21
22
23
24
25
```